493 F.2d 505
 14 UCC Rep.Serv. 1051
 In the Matter of Melvin Joseph TURNAGE, Bankrupt.
PUBLIC FINANCE CORPORATION OF ALABAMA, Appellant,
v.
Melvin Joseph TURNAGE, Bankrupt, Appellee.
No. 73-3752 Summary Calendar.*
*Rule 18, 5 Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431
F.2d 409.
 United States Court of Appeals, Fifth Circuit.
 May 3, 1974.
 
 Mayer W. Perloff, Mobile, Ala., for appellant.
 E. Graham Gibbons, Mobile, Ala., for appellee.
 Before BELL, SIMPSON and MORGAN, Circuit Judges.
 BELL, Circuit Judge:
 
 
 1
 Appellant, claiming to be a secured creditor of the bankrupt, filed a reclamation petition in bankruptcy court seeking certain property held by the trustee. The petition was denied on the sole ground that the description of the property in the financing statement was not sufficiently specific to satisfy Title 7A, 9-402(1) of the Alabama Code.[1] The district court adopted in full the opinion and order of the bankruptcy court, and this appeal followed. We reverse.
 
 
 2
 The collateral for the loan by appellant to the bankrupt was described in the security agreement as follows:
 
 
 3
 'All of the consumer goods including household goods, furniture and other personal property located in or about the debtors' premises at their address set forth above, including but not limited to: living room furniture, dining room furniture, bedroom furniture, kitchen stoves, refrigerators, dishwashers, clothes washers and dryers, electrical appliances of all types, room air conditioners, radio and television sets, record and tape playing sets and equipment, cameras, movie projectors, sewing machines, silverware, crystal, china, musical instruments, sports equipment, books, paintings, power and manual garden tools including lawnmowers, and power and manual wood and metal working tools.' (The foregoing appears on the printed form of the Security Agreement, and is immediately followed by the following in type): 1 divan tan, 1 chair tan, 1 longe chair green, 1 occ table maple, 2 end tables maple, 2 lamps, 1 hifi pansonic 3 beds fruitwood, 3 chests fruitwood, 3 dressers fruitwood, 1 kitchen table maple, 6 chairs maple, 1 refrigerator signature elct, 1 deep freezer g.e. elct, 1 t.v. 21 inch color silvertone, 1 washing machine kenmore 1 dryer kenmore
 
 
 4
 This description of the collateral was prefaced by an after-acquired property clause.
 
 
 5
 A financing statement was timely filed, and described the collateral as 'all of the consumer goods, including but not limited to furniture, appliances and other household goods and personal property of all kinds and description now or hereafter located at Debtor's address shown above.'
 
 
 6
 The district court concluded that the term 'consumer goods,' as used in the financing statement, was too broad to constitute a sufficient description. However, this conclusion was based on a misapprehension of the function of a financing statement. Its purpose is discussed by the Alabama Court of Civil Appeals, in Associates Capital Corp. v. Bank of Huntsville, 1973, 49 Ala.App. 523, 274 So.2d 80, 83:
 
 
 7
 The purpose of filing the financing statement is notice to any third party. The requirement of the description of the collateral is not for the purpose of informing such third party that the exact item which he is considering taking as security is already subject to a prior security interest, without further inquiry, though such could be the result of a full and complete serial number description. The requirement of 'a description that reasonably identifies' is satisfied if it reasonably informs third parties that a certain identifiable item, in this case a 1967 BSA motorcycle, belonging to or in the possession of a debtor may be subject to a prior security interest and that further inquiry is necessary to determine if it is the same motorcycle being offered them as collateral. Such is known as 'notice filing.' It merely places other parties on notice that there is need for investigation before taking as security for a loan items of the same type belonging to the debtor or which he intends to purchase.
 
 
 8
 We think it abundantly clear that any third party considering accepting, as collateral, property covered by the abovequoted security agreement would receive ample notice in the financing statement that further inquiry was in order.
 
 
 9
 That notice is the role of the financing statement, and that general terminology can be sufficient, is also made clear in Galleon Industries, Inc. v. Lewyn Machinery Co., 1973, 50 Ala.App.334, 279 So.2d 137, 141:
 
 
 10
 The sufficiency of a description in a financing statement is measured in terms of notice. Does the designation of 'equipment now owned or hereafter acquired' give notice to a seller of a machine to be installed on the premises of an operating business and used in production that it is subject or likely to be subject to a perfected security interest? We hold it does.
 
 
 11
 See also In re Wilco Forest Machinery, Inc., 5 Cir., 1974, 491 F.2d 1041 (applying Alabama law).
 
 
 12
 The cases relied upon by the district court are inapposite, and in any event cannot override the Alabama authority quoted above. In re Lehner, 10 Cir., 1970, 427 F.2d 357, affirmed a district court decision that three pieces of household electronic equipment were insufficiently described in a financing statement as 'consumer goods.' Aside from the fact that there the appellate court decided only that the district court was not 'clearly wrong,' we note that in the instant case both the financing statement and the security agreement refer to all consumer goods at a specific address, and greater specificity in the financing statement is neither practical nor necessary to put potential creditors on notice.
 
 
 13
 In re Laminated Veneers Co., Inc., 2 Cir., 1973, 471 F.2d 1124, concerned not a financing statement, but rather a security agreement. The court noted that the purpose of the latter is to express the intent of the parties, not merely to instigate further inquiry by third parties. Thus the description of collateral in the security agreement is subject to stricter standards of specificity than is that in the financing statement.[2] On this basis the court concluded that 'equipment' was insufficient to describe two automobiles, especially where another motor vehicle had been listed separately.
 
 
 14
 In re Fuqua, 10 Cir., 1972, 461 F.2d 1186, concerned a security interest in livestock, feed and machinery. The court ruled that 'all personal property' was an insufficient description in a financing statement, although it recognized that under Kansas law 'all personal property . . . in a certain county' would be sufficient. For our purposes, we need note only that the financing statement before us referred to 'consumer goods,' which is a defined subclass of all personalty, Ala.Code, Tit. 7A, 9-109(1), and that it further restricted the description to those consumer goods located at a specific address.
 
 
 15
 The judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 Title 7A, 9-402(1) is in relevant portions identical to the corresponding section of the Uniform Commercial Code. It provides as follows:
 (1) A financing statement is sufficient if it . . . contains a statement indicating the types, or describing the items, of collateral . . ..
 
 
 [2]
 Section 9-203(1)(b) of the Uniform Commercial Code, which has been adopted verbatim in Alabama, requires that a security agreement contain 'a description of the collateral.' This requirement should be compared with that of section 9-402(1), requiring of a financing statement only that it contain 'a statement indicating the types, or describing the items, of collateral'
 In pointing out this distinction between financing statements and security agreements, we do not mean to suggest that the term 'consumer goods,' which is defined at UCC 9-109(1), is too general a term for use in the latter. That issue is not before this court.