**In re Homer Shelby SHROPSHIRE, Debtor.**

**Homer Shelby Shropshire, Plaintiff,**

**v.**

**Oakwood Acceptance Corp., and JP Morgan Chase Bank, Defendants.**

**Bankruptcy No. 01–43609–JSS–13.**
**Adversary No. 02–40192–JSS.**

United States Bankruptcy Court, N.D. Alabama, Eastern Division.

Aug. 12, 2002.

Ralph K. Strawn, Henslee, Robertson, Strawn & Knowles, LLC, Gadsden, AL, for Plaintiff–Debtor.

Richard H. Cater, Anniston, AL, for Defendants.

Linda Gore, Gadsden, AL, Chapter 13 Standing Trustee.

## ORDER

JAMES S. SLEDGE, Bankruptcy Judge.

This adversary came before the Court on July 17, 2002, for trial. In the complaint, the plaintiff sought a determination as to the validity, priority, or extent of the liens held by the defendants. Counsel for the plaintiff, counsel for the defendants, and the trustee appeared and presented evidence at the hearing. With the close of all the evidence, this Court took the matter under advisement and now renders its findings of fact and conclusions of law as set forth in this Judgment in accordance with Fed. R. Bankr.P. 7052, *applying* Fed. R.Civ.P. 52.

## JURISDICTION

This Adversary Proceeding seeks a determination of the validity, priority, or extent of a lien. Pursuant to 28 U.S.C. §§ 1334(a), 1334(e), 157(a), 157(b)(1), and the General Order of Reference entered by the United States District Court for the Northern District of Alabama, this Court is possessed with the original and exclusive jurisdiction to hear and determine all cases under title 11 and all proceedings arising in or under title 11.

In accordance with 28 U.S.C. §§ 157(b)(2)(A), and 157(b)(2)(K), these matters constitute core proceedings. The order of reference has not been removed from this Court in this title 11 case; and neither personal jurisdiction nor venue have been contested in the title 11 case or these specific matters. Therefore, this Court concludes that subject matter, in personam, and in rem jurisdiction exists in this Court and venue is proper.

## FINDINGS OF FACT

1. The debtor initiated this bankruptcy case on October 5, 2001.

2. On November 1, 2001, a proof of claim was filed by Oakwood Acceptance Corp. (hereinafter "Oakwood"). This claim listed Oakwood as Servicer for Deutsher Financial as the name of the creditor and was filed as a secured claim for $30,991.50. (Claim No. 5) This proof of claim was unsigned.

3. On November 13, 2001, Oakwood filed an amended claim identical to Claim No. 5, except this proof of claim was signed. (Claim No. 9)

4. On March 13, 2002, Oakwood filed yet another claim. Unlike the previous claims, this claim identified the creditor as JP Morgan Chase Bank, a New York banking association formerly The Chase Manhattan Bank, and formerly Chase Manhattan Trust Company, National Association (hereinafter "JP Morgan"). Like the previous claims, it was filed as a secured claim and listed the debt amount as $30,991.50. (Claim No. 20)

5. According to the documentation attached to Claim No. 20, the debtor executed a Manufactured Home Retail Installment Contract on October 15, 1997. The party identified as the seller on the contract was B.R. Holding Corp. This contract includes a security agreement which conveyed a security interest to the seller. (Defendant's Exh. 2)

6. The Retail Installment Contract contained a provision assigning the contract to Deutsche Financial Capital. (Defendant.'s Exh. 2)

7. Deutsche Financial Capital LLC is the entity listed as the lienholder on the certificate of title executed by the State of Alabama Department of Revenue on March 10, 1998. (Plaintiff's Exh. 1)

8. No other certificate of title was executed on this property. (Testimony of Wallace Tycer)

9. By contract dated January 1, 1998, Deutsche Financial Capital LLC assigned its interest in the contract to Deutsche Financial Capital Securitization LLC. (Attachment 3 to Defendant.'s Exh. 1)

10. Deutsche Financial Capital Securitization LLC transferred ownership of the account to PNC Bank National Association, as Trustee via a Pooling and Servicing Agreement also executed on January 1, 1998. (Attachment 4 to Defendant.'s Exh. 1)

11. Per the Pooling and Servicing Agreement, June 1997 Edition, PNC granted Oakwood the right and duty to service the contract. (Attachment 5 to Defendant.'s Exh. 1)

12. Chase Manhattan Trust Company, National Association became the owner of the contract pursuant to a corporate trust business acquisition agreement dated July 31, 1998.

13. By Amendment to the Pooling and Servicing Agreement dated September 28, 2001,. Chase Manhattan Bank, a New York Banking Corp. was designated as the Trustee. (Testimony of Wallace Tycer)

14. Chase Manhattan Bank changed its name to JP Morgan Chase Bank and is the current name of the Trustee of the Trust which owns this contract. (Testimony of Wallace Tycer)

## CONCLUSIONS OF LAW

The Amended Complaint (Doc. No. 6) makes two specific requests for relief from the Court. Paragraph 4 of the complaint contains the following statement: "Plaintiffs [sic] aver that the claim filed by the defendants should be allowed by the court under 11 U.S.C. § 506 as a secured claim for the amount of $0.00 only, and as an unsecured claim for the amount of $30,991.50." This allegation is consistent with complaints of this type wherein a debtor challenges the secured status of a creditor or the valuation of collateral securing the secured claim. By this allegation, debtor does not seem to be contesting the ownership of the claim.

Although the debtor seems to be challenging the secured status of the claim or the valuation of the collateral, the prayer for relief contains a request which is inconsistent with the sentence quoted above. "Plaintiff also prays that the court will determine which of the defendants, if either of them, is the current holder of the secured and/or unsecured claims which are the subject of this adversary." With this request, debtor now seems to be challenging the ownership of the claims. Even though the debtor seems to be confused on this point, the Court will try to make the determinations requested of it in the prayer.

From the evidence presented, it seems clear to the Court that JP Morgan is the current holder of this claim. Testimony and documentary evidence was presented tracing this claim from its inception to its current resting place with JP Morgan. Debtor presented no evidence to challenge

this conclusion. As for Oakwood, evidence was presented it is the authorized servicing agent for JP Morgan on this claim. This conclusion is supported in the debtor's brief (Doc. No. 11), wherein the debtor concedes that JP Morgan is the current holder of the claim.

Having established the ownership of the claim, the Court turns to the next issue to be determined, the secured status of the claim. It is undisputed the initial contract contained a clause granting a security interest in the property. The Certificate of Title, listing Deutsche Financial Capital LLC as lienholder, is proof that, at least at one time, a security interest existed on the property. The question, as presented by the debtor's unclear argument, is whether JP Morgan, the current note holder, holds a secured claim despite no Certificate of Title issued listing it as the lienholder. Does a secured claim holder have to be perfected to be treated as secured in Chapter 13?

▪ In the debtor's brief, the debtor goes to great pains to argue that JP Morgan is not a properly perfected party. The debtor is confusing the terms of perfection and security. Although related, secured does not equal perfected. There are three elements necessary to create a security interest: 1) that the debtor has signed a security agreement containing a description of the collateral, 2) the debtor has rights in the collateral, and 3) the secured creditor has given value. *First Maryland Leasecorp. v. M/V Golden Egret,* 764 F.2d 749 (11th Cir.1985). Noticeably absent from this list is a requirement of perfection. This claim started as secured. The original agreement created a security interest or a lien upon the property. The assignment of that security interest did not effect "the validity of the security interest." Ala.Code § 32–8–63(a). Under the Bankruptcy Code, an allowed claim

secured by a lien on property is a secured claim under 11 U.S.C. § 506(a). Here, we have an allowed claim, which is secured by a lien. Thus, we have a secured claim.

▪ Perfection merely serves to put inquiring creditors on notice of a prior security interest. *In re Wilco Forest Machinery, Inc.,* 491 F.2d 1041 (5th Cir.1974); *Associates Capital Corp. v. Bank of Huntsville,* 49 Ala.App. 523, 274 So.2d 80 (1973) ("The purpose of filing the financing statement is notice to any third party.") Perfection bears no impact upon the secured/ unsecured determination of the debtor and the secured creditor. Unless perfected, a security interest *is not* valid against "*creditors* of the owner or *subsequent transferees* or *lienholders* of the vehicle." Ala.Code 32–8–61(a)(emphasis added). A security interest *is* valid against the debtor regardless of the perfection. Although there may be consequences if the security interest is not properly perfected, *e.g.* the strong-arm powers under 11 U.S.C. § 544, that is not the issue at stake here.

The debtor has not challenged that any of the elements necessary to establish a security interest are absent. As such, the Court must find the claim is secured.

The debtor would like this Court to go further and make a determination as to the perfection of the security interest. However, the Court need not make this determination. The only issue before the Court is whether the claim should be classified as secured or as unsecured, and, as between this debtor and this creditor, there really is no question that the claim is secured.. The debtor makes a vague reference to the trustee having a superior claim to JP Morgan. This may or may not be true. However, that is not the issue currently before the Court.

The Court turns to the final issue to be determined, the value of the collateral. To paraphrase, 11 U.S.C. § 506(a) allows a claim to be secured to the extent of the value of the estate's interest in the collateral securing the claim. The remaining portion is treated as an unsecured claim. Thus, a debtor may limit a secured claim by presenting evidence as to the value of the collateral. Here, the debtor did not present any evidence as to the value of the collateral as stated in the proof of claim filed by the defendants. As the debtor failed to present evidence as to the value of collateral, the debtor failed to meet its burden of proof with respect to challenging the secured portion of the claim under 11 U.S.C. § 506(a). Accordingly, a judgment must be rendered in favor of the defendants awarding them a secured claim in the amount of $30,991.50.

Accordingly, upon the foregoing and for good cause;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that JP Morgan is the current holder of the note at question in this case and it holds a secured claim in the amount of $30,991.50.

**IT IS FURTHER ORDERED AND DIRECTED** that the Clerk of this Court shall send a copy of this default judgment through the United States mail to each of the following (which shall be sufficient service and notice hereof): the Plaintiff, the Defendants, the Chapter 13 Trustee, and their respective attorneys.